UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **AMBER MURPHY,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | **CIVIL NO. 1:12-cv-379-DBH** |
| ) | |
| **UNITED STATES DEPARTMENT** ) | |
| **OF VETERANS AFFAIRS, ET AL.,** ) | |
| ) | |
| **DEFENDANTS** ) | |

### DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The issue here is whether the plaintiff has exhausted her administrative remedies, has timely and adequately pleaded a federal Whistleblower Protection Act claim, and has enough evidence to avoid summary judgment. I conclude that she has. I therefore **DENY** the defendants' motion to dismiss and for summary judgment.

### FACTS AND PROCEDURAL HISTORY

First, I state the relevant facts as pleaded in the plaintiff's Complaint (ECF No. 1) and as set forth in the administrative record, matters that do not implicate summary judgment practice.[1] The defendants have a far different

---

[1] Although a court ordinarily may not consider any documents outside the complaint in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the First Circuit has recognized "a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citation omitted). Murphy's EEO complaint and the VA's subsequent decision on that complaint are public records linked to Murphy's Complaint before this court and are not disputed by the parties, and thus may be considered without converting the VA's
*(continued next page)*

version of what occurred, but on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I deal with the version of the facts as pleaded. Later I address the summary judgment issues.

The plaintiff, Amber Murphy ("Murphy"), is a registered nurse formerly employed by the defendant United States Department of Veterans Affairs ("VA"). Murphy worked for the VA from February 2010 to October 2011 as a registered nurse in the Mental Health Intensive Case Management Program assigned to the Bangor, Maine office. Compl. ¶ 4.[2]

On an unidentified date, Murphy's supervisor directed her to begin involuntary commitment proceedings against a veteran with a gambling addiction. The veteran was not an imminent danger to himself or others. Id. ¶ 10. Murphy told her supervisor "that she did not believe the effort to involuntarily commit the veteran was in accordance with Maine laws." Id. ¶ 11. Over Murphy's objection, the supervisor demanded that Murphy nevertheless submit the commitment documents to Maine state court by the end of the day, and Murphy complied. Id. ¶ 12.

Murphy's supervisor then subjected Murphy to disciplinary review before a Performance Review Board. Id. ¶ 13. Murphy defended herself "by demonstrating that her supervisor had acted illegally in giving [Murphy] orders to involuntarily commit a patient." Id. ¶ 14. The Board "determined that

---

motion to dismiss into a motion for summary judgment. See, e.g., Jefferson v. Gates, 2010 WL 2927529, at *1 n.2 (D.R.I. July 2, 2010) (collecting cases allowing consideration of the administrative record on a motion to dismiss).

[2] Although Murphy's Complaint initially states that she was employed "through August 2011 when she was terminated by Defendant Stiller," Compl. ¶ 4, it later states that she was notified of her termination on October 15, 2011, id. ¶ 19. The latter date is consistent with the chronology set forth in the administrative record.

[Murphy] had acted properly by following her supervisor's illegal orders and removed [Murphy] from direct supervision by her former supervisor." Id. ¶ 15. Then the former supervisor "pursued another [Performance Review Board] against [Murphy] after [Murphy] provided some information given to her by a co-worker to a patient." Id. ¶ 16.  Murphy "was informed that [the second Board] was pursued against her because [Murphy] had successfully defended [against the first]." Id. ¶ 17.  The second Board "specifically asked [Murphy] about her involvement in [the first Board] and [Murphy] informed [the second Board] that the [Board] proceedings were being used as retaliation against her following her complaints about her former supervisor's instructions to her to involuntarily commit a patient in violation of State law." Id. ¶ 18.  Following the second Board's review, the defendant Brian G. Stiller, Medical Director of the Togus Veteran's Hospital in Augusta, Maine, terminated Murphy effective October 15, 2011.  Id. ¶¶ 3, 19.  "By terminating [Murphy] following her objections to be[ing] ordered to commit another person in violation of State law, Defendants violated [Murphy]'s rights protected by 5 U.S.C. § 2302(b)(8) [the Whistleblower Protection Act]." Id. ¶ 20.  That is the substance of the Whistleblower Protection Act Complaint that Murphy has filed in this court.

But first, on January 27, 2012, Murphy filed a complaint of employment discrimination with the VA Equal Employment Opportunity (EEO) office.  See Compl. of Employment Discrimination (ECF Nos. 11-6-8).  Although the EEO complaint focused primarily on Murphy's hostile interactions with another coworker, it also described her objections to the involuntary commitment actions against the veteran outlined in Murphy's Complaint in this court.  See

3

id. at 10 (ECF No. 11-7). Murphy's EEO complaint concluded, "This is an extreme case of sexual harassment, hostile work environment, *and retaliation due to reporting illegal activity*." Id. at 18 (ECF No. 11-8) (emphasis added). On September 27, 2012, the VA EEO office issued its final decision rejecting Murphy's complaint. See Final Agency Decision (ECF Nos. 11-19-21). The agency concluded that Murphy failed to establish harassment or sex discrimination by a preponderance of the evidence. Id. at 13, 14 (ECF No. 11-21). The agency also dismissed Murphy's claim based on reprisal for "reporting illegal activity" on the reasoning that while federal EEO law protects against reprisal for EEO activities such as opposing discriminatory practices or policies, "[i]t does not protect against reprisal for other reasons, such as whistle blowing . . . ." Id. at 2 (ECF No. 11-19).

On December 13, 2012, Murphy filed her Complaint in this court, suing both the VA and Stiller in his official capacity. (I will refer to the defendants collectively as the VA.) Murphy claimed that by terminating her, the VA violated the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b)(8).[3] The VA has moved to dismiss Murphy's Complaint and, in the alternative, requested summary judgment, arguing that Murphy failed to exhaust administrative remedies for her whistleblower claim and that Murphy has in any event failed to establish a prima facie violation of the Whistleblower Protection Act either in her Complaint in this court or on the summary judgment record. I held oral

---

[3] Murphy has not made a Title VII harassment or sex discrimination claim in her Complaint, nor has she responded to the VA's argument that any such claim must be dismissed. Accordingly, I conclude that she has not raised a Title VII discrimination claim before this court.

4

argument on August 20, 2013. Before oral argument, I directed questions to the lawyers via the Clerk's Office. As a result, the VA argued that Murphy's Complaint should be dismissed on the additional ground that she failed to bring suit within the 30-day limitations period beginning on September 27, 2012, the date on which the agency EEO office issued its final decision.

## ANALYSIS

### I. *Exhaustion of Administrative Remedies*

The VA has cited several cases that require the administrative exhaustion of Whistleblower Protection Act claims. See, e.g., Hendrix v. Snow, 170 F. App'x 68, 79 (11th Cir. Feb. 8, 2006) (affirming summary judgment where plaintiff "failed to include in any of her EEO complaints what disclosures she made that she now contends were protected under the [Whistleblower Protection Act]" (citation omitted)); see also Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002) ("Under no circumstances does the [Whistleblower Protection Act] grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."). The VA contended in its motion to dismiss, and again at oral argument, that Murphy did not raise a Whistleblower Protection Act claim in her agency EEO complaint and that she has accordingly failed to exhaust administrative remedies.

But the administrative record in this case reveals that Murphy *did* raise a whistleblower claim in her EEO complaint and, moreover, that the agency EEO office *recognized* it as a whistleblower claim. In her EEO complaint, Murphy described the dispute with her supervisor over involuntary commitment, stated that she reported the dispute to the first Performance

5

Review Board, and concluded by stating that she had been subjected to "retaliation due to reporting illegal activity." Compl. of Employment Discrimination at 18 (ECF No. 11-8). The EEO office in turn addressed this claim directly in its decision:

> The complainant *alleged that she was subjected to reprisal for "reporting illegal activity."* The complainant indicated that she had not experienced reprisal as a result of participating in prior EEO activity. Rather, she claimed to have exposed management for ordering her to comply with a patient-related issue that she did not agree with. Federal EEO law protects against reprisal for EEO activity such as participating in the EEO process, opposing discriminatory practices or policies, and requesting reasonable accommodation. *It does not protect against reprisal for other reasons, such as whistle blowing*, union activity, personal animosity, or for other reasons that are beyond the reach of Federal EEO law. Accordingly, we agree with [the Office of Resolution Management's] determination that *the complainant's allegation of reprisal fails to state a claim which is cognizable in the EEO process. For these reasons, it is the final decision of the Department to dismiss the complainant's claim based on reprisal.*

Final Agency Decision at 2 (ECF No. 11-19) (emphases added). There could not be a clearer case of exhausting administrative remedies with *this* agency.[4]

I have been given no explanation why the VA EEO office concluded that it could not deal with Murphy's whistleblower claim. Both the VA and Murphy now agree that it could deal with the matter, and they cite cases holding that although an employee cannot file a *pure* whistleblower claim with an agency EEO office, a "mixed case" containing both a whistleblower claim and a Title VII

---

[4] Gordon v. Gutierrez, 2006 WL 3760134, at *4-5 (E.D. Va. Dec. 14, 2006), cited by the VA at oral argument, is not to the contrary. The VA cited Gordon in arguing that Murphy failed to state the elements of a Whistleblower Protection Act claim in her agency EEO complaint and thus did not exhaust administrative remedies. But Gordon addressed the unrelated issue of whether the plaintiff had adequately made out a Whistleblower Protection Act claim in her *district court complaint*. (As I explain in section III.b infra, Murphy has adequately alleged a Whistleblower Protection Act claim in her Complaint before this court.)

discrimination claim can be filed with an EEO office. See, e.g., Stoyanov v. Mabus, 2010 WL 4918700, at *3 (D. Md. Nov. 24, 2010) ("If a plaintiff asserts a violation of the [Whistleblower Protection Act] in combination with an employment discrimination claim, however, he can also exhaust his administrative remedies by filing a complaint stating both causes of action with the agency's EEO department." (citations omitted)); Quinn v. West, 140 F. Supp. 2d 725, 733 (W.D. Tex. 2001) ("[I]n a 'mixed case' involving both whistleblower and discrimination claims, an aggrieved federal employee can . . . file a complaint with the employing agency's EEO department." (citations omitted)). Murphy's EEO complaint asserted both a whistleblower claim and a Title VII sex discrimination claim, and was thus a paradigmatic mixed case, although she no longer presses her Title VII claim in this court.[5]

I therefore conclude that Murphy exhausted her administrative remedies before bringing suit in this court. I am puzzled that the VA pressed the issue.

## II. Timeliness

Under the applicable regulation and cases, a plaintiff asserting a mixed claim involving both Whistleblower Protection Act and discrimination claims may file a civil suit within 30 days of a final agency EEO decision. See 29 C.F.R. § 1614.310(a) (a plaintiff is authorized to file a civil action "[w]ithin 30 days of receipt of a final decision issued by an agency on a [mixed] complaint unless an appeal is filed with the [Merit Systems Protection Board]"); McAdams v. Reno, 64 F.3d 1137, 1142 (8th Cir. 1995) ("Employees pursuing relief through an EEO mixed case complaint may file a civil discrimination action in

---

[5] See supra note 3.

7

federal district court within 30 days of a final decision by the agency or after 120 days have passed without a decision, but only if no appeal to the [Merit Systems Protection Board] is pursued at that time." (citations omitted)); Stoyanov, 2010 WL 4918700, at *3 ("A plaintiff who asserts a 'mixed' claim involving both [Whistleblower Protection Act] and discrimination claims with the EEO and does not appeal the decision to the [Merit Systems Protection Board] may file a civil suit in a federal district court within 30 days of a final decision . . . ."). Here, Murphy did not file suit in this court until December 13, 2012, well over 30 days after the issuance of the agency's final decision on September 27, 2012.

However, in a suit against the VA, the Supreme Court has held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990). The VA has pointed to no case holding that the 30-day limitations period is jurisdictional, and has failed to rebut the Irwin presumption. The Supreme Court has stated that "'[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.'" Wood v. Milyard, 132 S. Ct. 1826, 1832 (2012) (citation omitted). Here, the VA did not raise the 30-day limitations period as a defense either in its answer or in its dispositive motion. It only invoked the defense at oral argument after I brought the timeliness issue to the parties' attention. I therefore treat as forfeited any

argument that Murphy failed to bring suit within the 30-day period specified for mixed complaints.[6]

### III.  *Failure to State a Claim and Summary Judgment*

The VA also has requested dismissal of Murphy's claim on the grounds that she has not pleaded a prima facie violation of the Whistleblower Protection Act.  See Gov't's Mot. to Dismiss at 16-20 (ECF No. 11).  In its legal memorandum, the VA argued primarily that Murphy has not pleaded a causal relationship because her alleged whistleblowing occurred in August 2010 (according to the summary judgment record) and her termination occurred over a year later.  In a footnote, the VA raised an additional argument that Murphy's activity was not whistleblowing at all.  See id. at 18 n.23.  In her legal memorandum, Murphy did not respond to this footnote argument, but she did at oral argument.

---

[6] Even if the VA had raised a timeliness defense in its answer to Murphy's Complaint, I would treat the 30-day period as equitably tolled in this case because Murphy was merely following the language of the agency EEO decision, which erroneously treated her claim as a pure discrimination claim and stated that she had 90 days to file suit (the filing period for a pure discrimination claim under 42 U.S.C. § 2000e-16(c)).  See Final Agency Decision at 15 (ECF No. 11-21).  The Supreme Court has recognized "inadequate notice" as a basis for equitable tolling.  See Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984); see also Staropoli v. Donahoe, 786 F. Supp. 2d 384, 389-93 (D.D.C. 2011) (applying equitable tolling where an EEOC decision failed to inform plaintiff that a 30-day limitations period would commence at the end of the agency's 40-day review period if the agency had not issued a final order by that time).  Although Murphy was represented by counsel, and although there is no evidence that the agency intentionally misled her, the unambiguous 90-day language in the agency EEO decision is enough for me to conclude that Murphy did not receive adequate notice of the 30-day filing period.  Milford v. Sebelius, 2013 WL 1192818 (M.D.N.C. Mar. 22, 2013), cited by the VA at oral argument, is not to the contrary.  In Milford, the Middle District of North Carolina held that equitable tolling was not warranted where the final agency decision informed the plaintiff that she had 30 days to file a civil action and that both a request for counsel and a civil action must be filed within 90 days.  As the court noted, "[t]he language concerning a 90-day window appeared within a discussion concerning a plaintiff's right to request court-appointed counsel, separate from the prior notice as to the 30-day limitation period . . . [and it] did not negate the 30-day requirement."  Id. at *4.  The language in Milford was at worst ambiguous; here, by contrast, the agency EEO decision *un*ambiguously—and incorrectly—stated that the filing period was 90 days.

### a. *Did Murphy Engage in Whistleblowing?*

I deal with the footnote argument first, and reject it. The Whistleblower Protection Act prohibits employment actions in retaliation for

> any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

5 U.S.C. § 2302(b)(8)(A). The crux of Murphy's Complaint was that the VA subjected her to two Board reviews and then terminated her because she complained first to her supervisor and then to the Board that her supervisor was illegally seeking to commit a veteran involuntarily. The VA has argued that "[e]xpression of an opinion by the plaintiff to her direct supervisor that a veteran did not pose a risk sufficient to warrant involuntary commitment is not the type of 'disclosure' contemplated by the [Whistleblower Protection Act]." Gov't's Mot. to Dismiss at 18 n.23. But that is not a fair reading of Murphy's Complaint. As Murphy's lawyer made clear at oral argument, Murphy raised the allegedly illegal activity not only with her supervisor but also before the first Board. Murphy has claimed that the second Board proceeding and her termination were the result. A factfinder could find otherwise, but she has pleaded the claim sufficiently.[7]

---

[7] I therefore need not address the question whether the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465 (2012), applies retroactively. The VA has cited cases from the Fourth Circuit and the Federal Circuit holding that "disclosure of wrongdoing to the wrongdoer herself is not whistleblowing." Hooven-Lewis v. Caldera, 249 F.3d 259, 275 (4th Cir. 2001) (citation omitted); see also Horton v. Dep't of Navy, 66 F.3d 279, 282 (Fed. Cir. 1995) ("Criticism directed to the wrongdoers themselves is not normally viewable as whistleblowing."). But the WPEA amendments appear to supersede these holdings. See 5 U.S.C. § 2302(f)(1)(A) ("A disclosure shall not be excluded from subsection (b)(8) [the Whistleblower Protection Act] because—(A) the disclosure was made to a supervisor or to a
*(continued next page)*

### b.    Did Murphy's Whistleblowing Play a Role in Her Termination?

The VA has also asserted that Murphy has failed to plead a prima facie case of retaliation, pointing to the Whistleblower Protection Act plaintiff's burden of establishing that "the [protected] disclosure was a contributing factor to the personnel action taken against her." Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1322 (Fed. Cir. 1999) (citations omitted).  In the alternative, the VA has argued that Murphy has failed to introduce sufficient evidence of retaliation to withstand summary judgment on this issue.  I conclude that the VA is wrong on both arguments.

First, the pleading.  Murphy alleged in her Complaint that she was subjected to an initial Performance Review Board hearing following her objections to the involuntary commitment; that her former supervisor later arranged a second Performance Review Board hearing because Murphy successfully defended herself before the first one; that the first Performance Review Board was a topic of discussion at the second Performance Review Board; and that she was terminated following the second Performance Review Board hearing.  Those allegations are more than "mere conclusory statements," and state a plausible claim for relief under the Whistleblower Protection Act. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

The VA's alternative motion for summary judgment was defective under this District's Local Rule 56 because, as Murphy observed, see Pl.'s Resp. in

---

person who participated in an activity that the employee or applicant reasonably believed to be covered by subsection (b)(8)(A)(i) and (ii)."). Although the Merit Systems Protection Board has held that the WPEA applies retroactively, see Day v. Dep't of Homeland Sec., 2013 M.S.P.B. 49 (2013), no court has yet addressed the issue.  The issue is currently pending before the D.C. and Ninth Circuits.  See Amos v. District of Columbia, No. 12-7119 (D.C. Cir. docketed Nov. 13, 2012); Kerr v. Salazar, No. 12-35084 (9th Cir. argued May 22, 2013).

Opp'n to Gov't's Mot. to Dismiss at 1 n.2 (ECF No. 14), it failed to provide a statement of material facts not in dispute. See D. Me. R. 56(b). That alone is enough to deny the motion.

If I proceed to the merits and examine the variety of exhibits the parties have filed and referred to, the case is closer (the VA disagreed vehemently with Murphy's version of what occurred), but I conclude that Murphy has nevertheless presented sufficient evidence for a factfinder to infer that she was terminated in retaliation for voicing her disagreement with her supervisor. Under the Whistleblower Protection Act:

> after an employee establishes by a preponderance of the evidence that she made a protected disclosure, that subsequent to the disclosure she was subject to disciplinary action, and that the disclosure was a contributing factor to the personnel action taken against her, the agency must prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure.

Carr, 185 F.3d at 1322 (citations omitted).

The VA has argued that the lapse of more than a year between the involuntary commitment and Murphy's termination precludes any inference of retaliation, see Gov't's Mot. to Dismiss at 16-20, but that factor is not dispositive. Although a factfinder certainly could consider the passage of time as undermining Murphy's claim of retaliation for whistleblowing, this court has recognized that "[a]n absence of a close temporal relationship does not *preclude* a finding of retaliation." Osher v. Univ. of Me. Sys., 703 F. Supp. 2d 51, 68 (D. Me. 2010) (emphasis added) (citation omitted). Thus, the lapse of time alone is not a basis for summary judgment.

12

The VA also has argued that the first Performance Review Board hearing could not have been retaliatory because Murphy's supervisor initiated it a couple of days before Murphy complained about the involuntary commitment, and that the real basis for Murphy's ultimate termination after the second hearing was her disclosure of confidential information about a coworker to a patient. But Murphy was not informed of the first hearing until after the involuntary commitment incident; when she asked her supervisor then what she had done, the supervisor responded, "You know what you did," Murphy Decl. ¶ 35 (ECF No. 14-1); and the first Performance Review Board dealt with the incident.[8] Moreover, one of Murphy's coworkers has said in an affidavit that shortly after Murphy's ultimate termination, Murphy's former supervisor stated that she had wanted to fire Murphy the previous summer, but that she (the former supervisor) had gone to the first Performance Review Board hearing unprepared. Sprouse Decl. ¶ 64 (ECF No. 14-24).

All in all, it is a murky picture, with both sides firmly convinced that their factual versions are correct. The dispute certainly is not appropriate for summary judgment. A factfinder could infer from the variety of statements in the record that Murphy's opposition to the involuntary commitment was involved in the first Performance Review Board in September 2010, and that, unhappy with Murphy for broaching the issue before the Board, the supervisor

---

[8] The memorandum requesting a Summary Board Review was dated August 10, 2010 and Murphy's supervisor signed it on August 12, 2010, see Pl.'s Ex. 12 (ECF No. 14-13); Murphy responded to the supervisor's email requesting involuntary commitment on August 13, 2010, see Pl.'s Ex. 8 (ECF No. 14-9). However, Murphy's supervisor did not inform her of the Performance Review Board hearing until after the involuntary commitment, on August 17, 2010. See Murphy Decl. ¶ 34 (ECF No. 14-1).

13

in turn arranged the second Performance Review Board a year later. A factfinder could also infer from the former supervisor's statement to Murphy's coworker that the purported reason for the second Performance Review Board (disclosure of confidential information) was in fact a pretext[9] and that the former supervisor's real motive stemmed from the events of the previous summer, including Murphy's disagreement over the involuntary commitment and her ensuing allegations before the first Performance Review Board. If the factfinder finds that Murphy's complaint about an illegal commitment was a contributing factor to her termination, under the Act the burden shifts to the VA to prove by clear and convincing evidence that it would have terminated Murphy regardless. See Carr, 185 F.3d at 1322. It has failed to do so. Of course, a factfinder may credit the VA's version and find in the VA's favor on the reason for Murphy's termination, but the summary judgment record does not permit me to do so.

---

[9] See Kelley v. Corr. Med. Servs., 707 F.3d 108, 116 (1st Cir. 2013) (overturning a ruling that plaintiff had failed to raise a factual dispute as to whether her employer's stated reason for her termination (insubordination) was a pretext for retaliatory animus, and noting that "'where a plaintiff . . . makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be "particularly cautious about granting the employer's motion for summary judgment."'" (citations omitted)).

**CONCLUSION**

For the foregoing reasons, I **DENY** the defendants' motion.[10]

**SO ORDERED.**

**DATED THIS 23RD DAY OF AUGUST, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[10] I am troubled that the parties persuaded the Magistrate Judge to vacate her original scheduling order and sidestepped Local Rule 56 requirements by asserting that a preliminary ruling on a discrete issue might avoid unnecessary expense in discovery and other matters. This case would have benefited greatly from a Local Rule 56(h) conference. But in a joint filing, the parties told the Magistrate Judge that the defendants would "file a dispositive motion seeking dismissal or summary judgment for failure of the plaintiff to exhaust administrative remedies." Joint Obj. to Scheduling Order at 1 (ECF No. 9). As a result, on April 3, 2013, the Magistrate Judge ordered: "Defendant to file its dispositive motion by June 3, 2013, normal response and reply times; no Local Rule 56(h) conference required prior to filing the motion; following resolution of dispositive motion, a new scheduling order will issue." Order Granting Obj. to Scheduling Order (ECF No. 10). Had the issue indeed been only failure to exhaust administrative remedies, that might have been a proper approach. As appears above, it was not a complicated issue and required no discovery. But a conference might also have revealed the speciousness of the argument.

    Moreover, despite the representation to the Magistrate Judge, the defendants proceeded to file a motion based not only upon the plaintiff's asserted failure to exhaust administrative remedies, but on the merits of her Whistleblower Protection Act claim as well. In doing so, the defendants provided a variety of exhibits, yet they did so without any statement of material facts, contrary to Local Rule 56(b). The plaintiff responded in kind. The resulting complications that the court had to confront in reviewing the competing facts are precisely the sort of thing a Local Rule 56(h) conference can avoid by a considered discussion of what the legal and factual issues are, and by the establishment of deadlines for statements of fact or stipulations.